UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GERRY CAIN,

        Plaintiff,

        vs.

THOMAS HAYES, ET AL.,

        Defendants.

Case No. C2-05-238
District Judge Sargus
Magistrate Judge Abel

## OPINION AND ORDER

Plaintiff Gerry Cain (Cain or Plaintiff) is an African-American female (Amd. Comp., Doc. 22, ¶ 3) who was, at all times pertinent to her claims here (and, so far as it appears, still is), an employee of the State of Ohio's Department of Job and Family Services (ODJFS). Doc. 22, ¶¶ 10-11. Defendants are four present or former "Caucasian" supervisory employees of that department, who are expressly sued in their "individual capacity only." Doc. 22, ¶¶ 4-8.[1] Cain invokes this Court's jurisdiction under 42 U.S.C. §§ 1983 and 2000e[2] and, inferentially, 28 U.S.C. §1331.

In Count I of her Complaint, Plaintiff alleges that effective June 30, 2002 she was "demoted" by the Defendants or their agents "in retaliation for speaking out against mismanagement of funds and the administration and for reporting the

---

1. This case is the severed portion of an earlier case, No. C2-04-465, in which Cain was a co-plaintiff and in which there was at least one "official capacity" defendant (Barbara Riley as current Director of ODJFS) as well as other defendants who are no longer parties here.

2. Plaintiff's earlier state law claim relying on Ohio Revised Code Section 4112.99 has since been voluntarily dismissed. Doc. 21.

disparate treatment."³ Doc. 22, ¶ 15. Plaintiff asserts in effect that these acts violated her rights to free speech and due process guaranteed by "the United States and Ohio Constitutions" so as to authorize her claim against Defendants pursuant to the provisions of 42 U.S.C. §1983. Doc. 22, ¶ 22.

In Count II of her Complaint, Plaintiff relies on the same allegedly retaliatory demotion and further asserts this was inequitable and unfair treatment as compared to "other similarly-situated Caucasian employees." Doc. 22, ¶¶ 26-27. In addition, Plaintiff claims disparate treatment by Defendants or their agents in the "refusal to adequately staff [Plaintiff's] department" compared to those of "her White male counterparts" (Doc. 22, ¶ 28), as well as retaliation also for her October 2001 filing of a "charge against Defendants with the Ohio Civil Rights Commission" (Doc. 22, ¶¶ 29, 30), all entitling her to sue Defendants under the provisions of 42 U.S.C. §2000e. Doc. 22, ¶¶ 33, 34.

As relief, Plaintiff seeks a declaratory judgment that Defendants' practices violated her rights under 42 U.S.C. §§ 2000e and 1983, an order "to make Plaintiff whole by providing reinstatement to her previous Step and PayRange [sic] with appropriate back pay and reimbursement for lost pension and other benefits and expenses", and "compensatory damages." Doc. 22, p. 11. Plaintiff also asks for attorney fees, costs, and disbursements. Id., p.12.

This case is now before the Court for consideration of Defendants' Motion To

---

3. Although there may be factual allegations of "disparate treatment" in Count II of the Complaint (see, e.g., Doc. 22, ¶¶ 26, 28, 29), there actually are no such factual allegations in Count I.

Dismiss First Amended Complaint and/or For Qualified Immunity, together with the memoranda filed by the parties in support and opposition thereto. Docs. 26, 29, and 30. Defendants rely on Rule 12(b), Fed. R. Civ. P., in seeking dismissal of all parts of the Amended Complaint and, further, seek a ruling as to qualified immunity with respect to any claims under of 42 U.S.C. §1983 that may remain against them. The Court will therefore address the Rule 12(b) portion of the Defendants' motion, first.

Essentially as stated by this Court recently in ruling on these and other defendants' motion to dismiss in the other, now-severed portion of this case (see Case No. C2-04-465, Opinion and Order 10-17-05), dismissal "should not be granted unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering the motion to dismiss, the Court must construe the complaint liberally in the non-movant's favor and accept all factual allegations and permissible inferences therein. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While a court "need not accept as true legal conclusions or unwarranted factual inferences," Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987), dismissal may not be granted based merely on the court's disbelief of a complaint's factual allegations. Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990). Neither is a complaint required to "set down in detail all the particularities of a plaintiff's claim," Westlake at 858, so long as the defendant is afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley

3

at 47. The motion to dismiss tests whether the plaintiff has stated a claim for which the law provides relief. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994). Consequently, a complaint will not be dismissed unless there is no law to support the claims made, the facts alleged are insufficient to state the claim, or there is an insurmountable bar to the claim on the face of the complaint.

The Court finds that *is* the case here with respect to Count II of the Amended Complaint, because its claim is made under 42 U.S.C. §2000e and, as noted above, Plaintiff is expressly suing these Defendants in their "individual capa-city only." Doc. 22, Caption, ¶¶ 5-8. Noting similar holdings in "a majority of our sister circuits" in Wathen v. General Electric Company, 115 F.3d 400 (6th Cir. 1996), our circuit has squarely held "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." Id. at 404-05. "Title VII" refers to Title VII of the Civil Rights Act of 1964 which, as amended, is codified in 42 U.S.C. §2000e, et seq., the federal statute upon which Count II expressly relies. As described in the Amended Complaint, the Defendants here plainly do not qualify as "employers." Thus, there is no law upon which Plaintiff may proceed on Count II against these Defendants in their individual capacities, as the statute relied on provides no basis for imposing personal liability. See also Akers v. Alvie, 338 F.3d 491 (6th Cir. 2003).

Count I of the Amended Complaint presents a different, if related, analytical problem in that it relies, not on §2000e, but on 42 U.S.C. §1983, which, in proper circumstances, does provide a basis for proceeding against individuals to impose

personal liability. See Hafer v. Melo, 502 U.S. 21 (1991). While §1983 is a remedial statute that does not, itself, create substantive rights, see Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 616-18 (1979), it does provide a remedy for the violation of rights created elsewhere. More specifically, it provides for the individual and personal liability of any person who, while acting under "color of state law," deprives another of a federal constitutional or statutory right. Hafer at 30-31 (citing Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974)). Count I in this case may be read as making such a claim for damages against these Defendants with respect to Plaintiff's alleged demotion in June, 2002.

In this count, Plaintiff relies on 42 U.S.C. §1983 in seeking a remedy for alleged violations of her rights under the First and Fourteenth Amendments to the United States Constitution, claiming that she was chosen for demotion in retaliation for exercising rights of free speech protected by the First Amendment and that the demotion was carried out without procedural due process required by the Fourteenth Amendment. Clearly, not all of the relief Plaintiff is seeking would be avail-able against any of these Defendants in their individual capacities. (One or more might be personally liable in damages, but reinstatement to previous position with back pay and benefits would only be available from an official capacity defendant, and there is none in this case.) Never-the-less, there clearly is law to support at least some of Plaintiff's claims, if she has alleged facts sufficient to support them.

In evaluating Plaintiff's Fourteenth Amendment Due Process Clause violation claim, the court must determine whether Plaintiff "had a property interest

that entitled her to due process protection," and, if so, "must then determine what process was due." Silberstein v. City of Dayton, ___ F.3d ___, 2006 LW 508074 *3 (6th Cir. 2006) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982)).

> Property interests do not derive from the Constitution, but rather are created and defined by "existing rules or understandings that stem from independent sources such as state law ...." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Supreme Court has recognized that when a state statute provides that "classified civil service employees" may be dismissed only for cause, the statute creates a property interest in one's employment that is protected by the Fourteenth Amendment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (interpreting Ohio Revised Code § 124.11).

Ibid.

In this case, however, Defendants point to the date and nature of Plaintiff's alleged demotion and placement in "Step X" within ODJFS and to the express provisions of Amended Substitute House Bill No. 470 (H.B. 470), enacted by the 123rd Ohio General Assembly, effective March 14, 2000. As most pertinent here, Section 19 of that enactment provides:

> During the period beginning July 1, 2000, and ending June 30, 2002, the Director of Job and Family Services has the authority to establish, change, and abolish positions for the Department of Job and Family Services, and to assign, reassign, classify, reclassify, transfer, reduce, promote, or demote all employees of the Department of Job and Family Services who are not subject to Chapter 4117[4] of the Revised Code.

The second paragraph of Section 19 includes directions for the placement of certain affected employees in "Step X" (as allegedly was done to Plaintiff), and the final

---

4. Having to do with public employee collective bargaining and nowhere alleged to be applicable here.

paragraph provides:

> Actions taken by the director of Job and Family Services or the Director of Administrative Services pursuant to this section are not subject to appeal to the State Personnel Board of Review.

Assuming for purposes of this analysis that Plaintiff's employment status with the ODJFS was such that the demotion in the June 2002 she complains of would otherwise have required some sort of due process opportunity under Ohio's civil service system, it is apparent that any such requirement was temporarily suspended at the time by operation of Section 19, above. Section 19 has withstood constitutional challenge in the courts of Ohio (see Keefer v. Ohio Department of Job and Family Services, No. 03AP-391, Ohio App. 10th Dist., Dec. 9, 2003 (unreported) 2003 WL 22890291), and the Court is aware of no authority suggesting its operation violates either the United States Constitution or federal law. Thus, the necessary state law basis for Plaintiff's property interest assertion effectively did not exist with respect to the action of which she complains. Consequently, a necessary basis for her Fourteenth Amendment Due Process claim is absent in this case.

With respect to the remaining claim in Count I, in order to establish a §1983 claim of retaliation for exercise of any constitutional right, a plaintiff must prove that he or she engaged in a constitutionally protected activity; that some adverse action by the defendant caused an injury that would likely chill a person of ordinary firmness from continuing to engage in the protected activity; and that the adverse action was motivated, at least in part, as a response to plaintiff's exercise of that constitutional right. See Leary v. Daeschner, 228 F.3d 729, 737 (6th Cir. 2003)

(citing Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998); see also Farhat v. Jopke, 370 F.3d 580, 588 (2004). The First Amendment's protection of free speech extends to speech by a public employee when that employee speaks as a citizen on matters of public concern; however, that protection does not extent to such an employee's speech made solely in the course of his or her public employment. See Connick v. Myers, 461 U.S. 138, 147 (1983).

In this case, because Plaintiff is a public employee complaining of alleged retaliation for exercise of First Amendment rights of free speech, there are further questions the Court must consider. As explained in Rogers v. Banks, 344 F.3d 587, 596 (6th Cir. 2003), and quoted in Farhat at 588:

> While public employees may not be required to sacrifice their First Amendment free speech rights in order to obtain or continue their employment, *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)(citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)), a state is afforded greater lee-way to control speech that threatens to undermine the state's ability to perform its legitimate functions. *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 475 n. 21, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). Therefore, in determining whether a public employer has violated the First Amendment by firing a public employee for engaging in speech, the Supreme Court has instructed courts to engage in a three-step inquiry. First, a court must ascertain whether the relevant speech addressed a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the answer is yes, then the court must balance the interests of the public employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry*, 209 F.3d at 604.

Whether Plaintiff's speech in this case is constitutionally protected at all, i.e., whether it involves a matter of public concern, is a question of law for the Court to determine. See Connick, at 148; Farhat at 589 (citing Bonnell v. Lorenzo, 241 F.3d 800, 809-10 (6th Cir. 2001)). As further pointed out in Farhat, the answer to that question "must be determined by the content, form, and context of ... [the] statement, as revealed by the whole record." 370 F.3d at 589 (quoting Connick at 147-48); see also, Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485, 499 (1984), quoting New York Times v. Sullivan, 376 U.S. 254, 285 (1964)..

In this case, Plaintiff alleges, generally, that "[t]hroughout her employment with Defendants, Plaintiff expressed her opinions and raised concerns over mismanagement of funds by Defendants and/or its [sic.] agents" (Am'd Comp., Doc. 22, ¶ 12) and, somewhat more specifically, that on numerous occasions after her appointment as Bureau Chief in December, 1998, she complained "in written and verbal form to Defendants Hayes, Singer and Schuster about Defendants' failure to carry out provisions of the [federal Workforce Investment] Act which related to the State's duties" in five specific areas of responsibility. Am'd Comp., Doc. 22, ¶¶ 13-14. She contends, in effect, that her June 2002 demotion was in prohibited retaliation for the above exercise of First Amendment rights. Id., ¶¶ 15, 19.

Considering the above pleadings, it is apparent this Court cannot find it is beyond doubt that Plaintiff "can prove no set of facts in support of [this last] claim" that would entitle her to relief against any of the Defendants. There simply is not enough information before the Court to make such a ruling possible. As discussed

above, the applicable rules of pleading are sufficiently liberal in not requiring great detail or specificity and the questions presented by a public employee's claim of this type are sufficiently complex (see, e.g., extended analysis in Farhat, 370 F.3d 587-96) that is not possible at this point in this case to make a dispositive ruling in response to Defendants' present Rule 12(b) motion. Further, and for similar reasons, it is not possible to rule on any of the Defendants' claims of qualified immunity. (See discussion of the analysis required in ruling on such claims in Silberstein, 2006 WL 508074 *10-12.) This is not to say that the Court may not be able to rule further at a later, but still early, stage of the case respecting either the sufficiency of this claim by Plaintiff or any of the Defendant's claims of qualified immunity.[5]

Consistent with the foregoing, Defendants' Motion To Dismiss First Amended Complaint (Doc. 26) is GRANTED with respect the Plaintiff's denial of due process claim in Count I and the entirety of Count II, and the same is DENIED with respect to Plaintiff's retaliation for exercise of free speech claim in Count I and any ruling at this time respecting Defendant's possible qualified immunity.

IT IS SO ORDERED.

3-31-2006
Dated

Edmund A. Sargus, Jr.
United States District Judge

---

5. Rulings may be possible, for example, as to one or more of the Defendants after further pleadings or in response to appropriately supported, pre-discovery motions for summary judgment, thus protecting the interest in early disposition of such issues recognized by the Supreme Court in such cases as Mitchell v. Forsythe, 472 U.S. 511 (1985), and Andereson v. Creighton, 483 U.S. 635 (1987).